UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MARK HOLLOWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:13cv225 |
| | ) | |
| SHAMBAUGH & SON, INC. and | ) | |
| PLUMBERS & STEAMFITTERS | ) | |
| LOCAL NO. 166 U.A., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on two motions to dismiss, filed by the defendants, Plumbers & Steamfitters Local No. 166 U.A. ("Local 166") and Shambaugh & Son, L.P.[1] ("Shambaugh"), on September 12, 2013. The plaintiff, Mark Holloway ("Holloway"), filed his response on October 17, 2013, to which the defendants replied on November 1, 2013.

For the following reasons, the motions to dismiss will be granted.

Discussion

The facts, as represented by Holloway, are as follows. Prior to January of 2013, Holloway was a member in good standing of Local 166 (Plaintiff's Complaint, ¶1). Local 166 was the designated collective-bargaining representative of the bargaining unit consisting of Shambaugh's plumber and steamfitter employees, including Holloway, who were employed at Shambaugh's Fort Wayne office. *Id*. at ¶7. As set forth in Holloway's Complaint, Shambaugh and Local 166 were parties to a written collective bargaining agreement (hereinafter the "CBA"),

---

[1] Shambaugh is misnamed in the caption of Plaintiff's Complaint. Shambaugh's correct legal name is Shambaugh & Son, L.P.

effective from June 1, 2009 through May 31, 2012, and thereafter from year to year. *Id*. at ¶8. As alleged in Holloway's Complaint, on January 24, 2013, Holloway was wrongfully discharged by Shambaugh for his alleged failure "to meet work requirements". *Id*. at ¶15. As a member of Local 166 for the past twenty-six years, Holloway was required to submit to approximately two drug tests per year for the past ten years. *Id*. at ¶10. During the course of his four-year employment with Shambaugh, Holloway consistently received a drug test notification in the mail which contained a Letter of Notice for Random Testing, and the information regarding the locations for the random drug test, which started a 72-hour window in which Holloway could submit to the drug test. *Id*. at ¶11.

On or about January 3, 2013, Holloway was notified by Local 166 by telephone that he had a random drug test due; however, Local 166 did not provide Holloway with the Letter of Notice. *Id*. at ¶12. Despite Holloway's repeated requests for a Letter of Notice from Local 166, Local 166 did not provide the notice to Holloway. *Id*. at ¶13. Rather than providing Holloway with the Letter of Notice, representatives of Local 166 allegedly asked Holloway if he "needed more time to dry out", and notified him that they would just "tell them you're out of town working," intimating that Holloway's drug test results would not be clean. *Id*. at ¶14. As set forth above, Holloway was discharged by Shambaugh on January 24, 2013, for his alleged failure "to meet work requirements". *Id*. at ¶15.

Pursuant to the CBA, "no employee covered by the agreement shall be discharged except for just cause" *Id*. at ¶8. Because of this, on January 30, 2013, Holloway protested his termination to agents of Local 166. *Id*. at ¶20. The agents of Local 166 told Holloway that there was nothing that the Local 166 could do because it was Holloway's fault. *Id*. An agent of Local

166 asked Holloway if he wanted to file a grievance against Shambaugh. *Id*. at ¶21. Holloway informed the agent that he believed the Local 166 had mishandled things by repeatedly refusing to provide the Letter of Notice for his drug test, suggesting that he tell a lie instead, which ultimately resulted in Shambaugh wrongfully terminating him. *Id*. at ¶22. The Local 166 agent informed Holloway that if he had a problem with him or the Union, that he "would have to go to the NLRB". *Id*. at ¶23.

Holloway alleges that at the time of the conversation, the period for filing a grievance on Holloway's behalf had not yet expired. *Id*. at ¶24. Pursuant to the CBA, "[a] grievance shall be filed for resolution within two (2) weeks of the date of the occurrence or from the date it reasonably could have been discovered by the parties involved in accordance with the grievance procedure covered in this article". *Id.* at ¶8. Holloway alleges that Local 166 failed to perform an investigation or file a grievance within that two week period and instead permitted the time for filing a grievance to lapse. *Id.* at ¶24. According to Holloway, Local 166 finally offered to file a grievance on Holloway's behalf on May 20, 2013, nearly four months after Holloway's termination. *Id.* at ¶35. Holloway claims that by the time that the Local 166 finally decided to act on Holloway's behalf, the filing would have likely been rejected by Shambaugh as untimely. Holloway also states that he never received any information from Local 166 or Shambaugh which indicated that he would be eligible for reinstatement to his job. *Id.* at ¶25. Holloway alleges that Local 166 failed to investigate his Complaint, provide him with any assistance in getting reinstated, or to initiate a grievance on his behalf during the two week time period specified in the CBA.

In ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule

3

12(b)(1) and/or failure to state a claim under Rule 12(b)(6), the court assumes all well-pleaded allegations in the Compliant to be true and draws all reasonable inferences in the plaintiff's favor. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007). However, legal conclusions are not entitled to any assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *Dist. of Columbia Retirement Bd. v. United States*, 657 F.Supp. 428, 431 (D.D.C. 1987).

In order to survive a Rule 12(b)(6) Motion to Dismiss, the complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed.R.Civ.P. 8(a)(2)). The plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly et al.*, 127 S. Ct. 1955, 1964 (2007), citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Factual allegations must be enough to raise a right to relief from speculative to plausible. *Twombly*, 127 S. Ct. at 1965. Dismissal of an action is warranted if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

In support of their motions to dismiss, the defendants argue that Holloway's action is time-barred, and also fails to state a claim for breach of the duty of fair representation. Defendant Shambaugh also argues that Holloway's allegations establish that Shambaugh had just cause to terminate his employment. As noted, Holloway brings his suit under Section 301 of the LMRA and argues that Local 166 breached its duty of fair representation by "failing and refusing to

protest and grieve Mr. Holloway's wrongful termination by Shambaugh…." (Pl. Compl. ¶ 31). Specifically, Holloway states that he was terminated from Shambaugh on January 24, 2013, and that he protested his termination to Local 166 on January 30, 2013. (Pl. Compl. ¶¶ 15, 20). Accepting these allegations as true, the defendants argue that it is clear that Holloway's action against Local 166 for breach of the duty of fair representation accrued on January 30, 2013, after Holloway's conversation with agents of Local 166.

The affirmative defense of limitations may be raised by way of a motion to dismiss if it appears from the complaint that plaintiff's claim is time-barred; "[i]f a plaintiff pleads facts that show its suit is barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis." *Kauthar SDN MHD v. Sternberg,* 149 F.3d 659, 670 (7th Cir. 1998).

Claims against a labor organization for breach of fair representation are governed by the six-month statute of limitations of Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) ("NLRA"). *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983). In *DelCostello*, the Supreme Court held that a six month statute of limitations applies to an employee's "hybrid" suit, *i.e.* a suit asserting claims against both the employer and a union. *DelCostello*, 462 U.S. at 164-5. Such a suit is termed "hybrid" because, although both claims arise out of the same set of facts, the basis for the claims are separate statutory schemes. *Id*. A claim brought against an employer, for breach of a collective bargaining agreement, rests on § 301 of the LMRA. *Id.* A claim against a union for breach of its duty of fair representation, on the other hand, is based upon an implied duty under the NLRA. *Id.* The Court borrowed this six-month limitations period from § 10(b) of the NLRA. *Id. As* the Court explained, this six month limitations period is applicable to both the claim against the union and the claim against the employer because it is likely that each

claim will involve alleged unfair labor practices. *Id.* at 170.

The Seventh Circuit has held that the limitations period for hybrid suits begins to run when the claimant discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged breach of duty. *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 304 (7th Cir. 1983). In *Metz*, the plaintiff alleged a breach of the duty of fair representation when the Union failed to initiate the grievance process as set forth in the collective bargaining agreement. *Id.* The plaintiff argued that the statute of limitations had not started because a final determination had not been made of her grievance, nor did the Union give her notice of the outcome of her grievance request. *Id.* The court found that the plaintiff's complaint, which was filed more than six months after the Union's refusal to take action, was time-barred because the "inactivity on the part of the Union should have been discovered by the [plaintiff] prior to the six-month period preceding the initiation of this action." *Id. See also Sosbe v. Delco Electronics Div. of General Motors Corp*, 830 F.2d 83 (7th Cir. 1987)(claim accrued on the date the Union informed the plaintiff that it would not pursue her grievances, and not at a later date when the grievances were withdrawn); *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999) (union inaction for a year put plaintiff on notice of claim) *Vorachak v. Alden Estates of Barrington, Inc.*, 2007 U.S. Dist. LEXIS 79526 (N.D. Ill. Oct. 26, 2007) (statute of limitations begins to run when the Plaintiff's claim accrued -, *i.e.*, when he discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation).

The defendants contend that the facts in the present matter are similar to the facts in *Metz*. The defendants argue that, accepting Holloway's allegations as true, he should have known that Local 166 did not intend to file a grievance on his behalf when he was directed to "take it up with

6

the NLRB." (Pl. Compl. ¶¶ 23, 31). Holloway states in his Complaint that he discussed his wrongful termination with Local 166 on January 30, 2013, and Local 166 declined to initiate the grievance process, instead telling him to "take it up with the NLRB." (Pl. Compl. ¶¶ 23, 31). Thus the defendants maintain that, under the facts set forth in the Complaint, it is clear that Holloway's cause of action accrued on January 30, 2013, when Local 166 failed to initiate the grievance process on his behalf. Additionally, Holloway, like the plaintiffs in *Metz* and *Anderson*, was made immediately aware that Local 166 had not initiated the grievance.

Holloway does not dispute that the statute of limitations for a Section 301 claim begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." However, Holloway argues that the statute of limitations did not begin to run on his claim until the last day that the Union could have filed a grievance, even though the Union had clearly informed Holloway that it did not intend to file a grievance on his behalf. (Pl. Compl. ¶¶ 23, 31). However, it is clear that the *Metz* Court clearly stated that a refusal by the Union "amount[s] to a final determination" which would start the six month statute of limitations. *Id* at 303. Contrary to Holloway's assertion, the expiration of the time period for filing a grievance only triggers the statute of limitations where there was no prior final determination by the Union. *Id*. *See Bigbie v. Local 142*, *International Brotherhood of Teamsters*, 530 F. Supp. 402, 404 (N.D. Ill. 1981) (a union's refusal to launch the grievance procedure is "final and binding" and begins the six month statute of limitations under Section 301).

Holloway also relies on *Christiansen v. APV Crepaco, Inc.* to support the contention that his cause of action began accruing on the last day Local 166 could have filed a grievance. In *Christiansen*, the plaintiff argued that the statute of limitations was not triggered until the date she

7

received actual notice that the union would not pursue the grievance it filed on her behalf, specifically stating that "prior to that time, the union had not made any final decision on her claim, and for all she knew, could have been working on it continuously since she initially approached her union steward." *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999). The court rejected this contention, finding that the plaintiff should "reasonably have become aware of the [union]'s decision." *Id*. at 914. In *Christiansen*, the union "had not made any final decision on [the plaintiff's] claim" when the date for filing a grievance under the CBA expired. Thus, the expiration of the grievance period was treated as the union's final determination. However, in the present case, Holloway was informed of Local 166's final decision when he was told "there was nothing that Local 166 could do because it was Mr. Holloway's fault." (Pl. Compl. ¶ 20). Thus the defendants argue that if the prior alleged statement by Local 166 was insufficient to provide Holloway with notice, Holloway should definitely have been made aware of Local 166's position when he was told he "would have to go to the NLRB." (Pl. Compl. ¶¶ 23, 31).

This court agrees with the defendants that after being told by Local 166 that there was nothing they could do because it was his fault, and informing him that he would have to go to the NLRB, Holloway reasonably should have been aware of the Union's final decision not to pursue a grievance. Thus, in the present case, under the applicable six-month limitations period, the last date for Holloway to initiate his hybrid claims against Local 166 and Shambaugh was July 30, 2013. The Complaint in the present matter was not filed until July 31, 2013, one day after the six month period had expired. The Complaint is therefore untimely and will be dismissed.

The defendants have also argued that Holloway fails to allege sufficient facts to support a claim for breach of duty of fair representation. The duty of fair representation standard requires

courts to show extreme deference to the Union, and this hurdle is difficult to surmount. *Vaca v. Sipes*, 386 U.S. 171, 191 (1967). In order to state a legally sufficient claim that a union breached its duty of fair representation, an employee "must allege facts from which the Court can deduce that the union, in taking some action adverse to the employee, engaged in wrongful behavior." *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239 (7th Cir. Ind. 1990). This high standard must be seen in light of the discretion a union has in determining whether to process a grievance at all. *See Vaca*, 386 U.S. at 192. The Seventh Circuit has explained: "The Supreme Court in *Vaca* left no doubt that a union owes its members a duty of fair representation, but that opinion also makes it clear that the union may exercise its discretion in deciding whether a grievance warrants arbitration." *Moore v. Sunbeam Corp.*, 459 F.2d 811 (7th Cir. 1972). Moreover, it is well established that to survive a 12(b)(6) motion to dismiss, a complaint that alleges a failure to process a grievance must allege "facts showing that the union intentionally failed to reasonably discharge its role as a grievance advocate." *Martin*, 911 F.2d at 1248. A union breaches its duty of fair representation if its actions are either: (1) arbitrary; (2) discriminatory, or (3) taken in bad faith. *Airline Pilots v. O'Neill*, 499 U.S. 65 (1991). Courts should look to each standard separately when determining whether a union violated its duty. *Griffin v. Air Lines Pilot Assoc.*, 32 F.3d 1079, 1083 (7th Cir. 1994).

As part of its determination as to whether a union's actions were arbitrary or in bad faith, the Court must determine whether the aggrieved employee actually requested that the Union initiate a grievance on his/her behalf. Courts have made clear that to make out a claim for breach of duty of fair representation, an employee must actually ask the union to initiate the grievance process. *Mechmet v. Four Seasons Hotels*, 825 F.2d 1173, 1178 (7th Cir. 1987) ("if a worker

9

doesn't even ask his union to press a grievance for him he can hardly complain that it has failed to represent him"); *See also Hiner v. BDP Company*, 716 F. Supp. 1152, 1155 (S.D. Ind. 1989). Absent a request to initiate a grievance, a union's failure to initiate a grievance can hardly be seen as arbitrary or discriminatory. Only where the Union arbitrarily or discriminatorily refuses an employee's request to initiate the grievance procedure does it violate the duty of fair representation. *See Mechmet*, 825 F.2d at 1178.

The defendants argue that Holloway has failed to allege anywhere in his Complaint that he actually requested that a grievance be filed. The defendants point out that Holloway states the opposite and acknowledges that the Union actually offered to file a grievance on his behalf. (Pl. Compl. ¶ 21). Thus the defendants contend that Holloway has pled insufficient facts to show Local 166's actions were arbitrary. As noted, the standard for reviewing whether a union's actions are arbitrary is extremely deferential toward the union. *Airline Pilots*, 499 U.S. at 66. A union is "given wide latitude to make tactical decisions, even those that benefit some workers at the expense of others." *Anderson v. LaSalle Steel Co.*, 129 Fed. Appx. 311, 314 (7th Cir. 2005). Under the arbitrary prong, a union's actions breach the duty of fair representation only if the union's conduct can be characterized as "so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." *Marquez v. Screen Actors Guild, Inc.* 525 U.S. 33, 45 (1998). Further, "only an egregious disregard for union members' rights constitutes a breach." *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171 (7th Cir. 1995).

The Seventh Circuit made clear in *Mechmet* that if a worker fails to actually ask his union to press a grievance for him he cannot complain afterward that the union failed to represent him. 825 F.2d at 1178. Absent a specific request to initiate a grievance, a union's failure to initiate said

grievance cannot be determined by a court to be arbitrary or discriminatory. *Id*. *See also, Hiner* 716 F. Supp. at 1155.

In the present matter, Holloway alleges in his Complaint that Local 166 breached its duty of fair representation by "failing and refusing to protest and grieve Mr. Holloway's wrongful termination by Shambaugh…" (Pl. Compl. ¶ 31). However, as the defendants have pointed out, nowhere in the Complaint does Holloway allege that he requested that the Union file a grievance on his behalf. In fact, as noted, Holloway actually states the opposite in paragraph 21 of his Complaint where he alleges that "an agent of Local 166 asked Mr. Holloway if he wanted to file a grievance against Shambaugh." (Pl. Compl. ¶ 21). Holloway does not specify whether he accepted or rejected the Union's offer to file a grievance, instead simply stating that the Union "failed to file a grievance." However, as the Seventh Circuit in *Mechmet* made clear, a cause of action for failure to represent in relation to the processing of a grievance does not accrue unless the member specifically requests that the union process a grievance. 825 F.2d at 1178.

The defendants further point out that the CBA that governs the dispute at issue in this case contains a grievance form that is used by members to initiate a grievance against an employer. Nowhere in the Complaint does Holloway allege that he submitted a written grievance form to Local 166, which Local 166 refused to process. The defendants argue that absent such allegations, Local 166 cannot be held to have breached its duty of fair representation to Holloway. *Mechmet*, 825 F.2d at 1178. As discussed above, the defendants are correct in their assertion that Local 166 cannot be held to have breached its duty of fair representation for not pursuing a grievance because Holloway has not even alleged that he requested that the Union pursue a grievance on his behalf.

The defendants correctly argue that Holloway's Complaint does not meet the high level

11

required by the Seventh Circuit. When determining whether a union's actions can be considered arbitrary, a court must determine whether the union's conduct can be characterized as "so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." *Marquez v. Screen Actors Guild, Inc*. 525 U.S. 33, 45 (1998). Only an "egregious disregard for union members' rights constitutes a breach [of the duty of fair representation]" *Garcia v. Zenith Electronics Corp*., 58 F.3d 1171 (7th Cir. 1995); *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363 (7th Cir. 2003).

Additionally, the defendants argue that Holloway fails to allege sufficient facts to support a claim that Local 166's actions were discriminatory or made in bad faith. The discriminatory and bad faith prongs of a claim for breach of duty of fair representation are subjective inquiries and require the court to consider a union's motivation behind its decision. *Konen v. International Brotherhood of Teamsters*, 255 F.3d 402 (7th Cir. 2001). To show that a union violated its duty in processing a grievance, plaintiffs must claim that a union "deliberately and unjustifiably refuses[d] to represent that worker in processing a grievance." *Superczynski v. P.T.O. Services, Inc.*, 706 F.2d 200, 202 (7th Cir. 1983); *see Dober v. Roadway Express, Inc.*, 707 F.2d 292, 294 (7th Cir. 1983). The Seventh Circuit has held that an employee must show evidence of intentional misconduct or bad faith by a union before a breach of the union's duty will be found. *Martin*, 911 F.2d at 1248. Allegations in a complaint must contain more than conclusory statements alleging improper representation. Instead, the Seventh Circuit requires that supporting facts showing discriminatory intent by the union must be specifically pled. *Slagley v. Illinois Central Railroad Co.*, 397 F.2d 546, 552 (7th Cir. 1968).

In the present case the defendants argue that Holloway has failed to plead facts showing that Local 166's decision to not process a grievance was discriminatory or done in bad faith.

Holloway makes no allegations that Local 166 treated other requests for grievances differently nor does he allege that Local 166 had any improper motive in not filing his grievance. Moreover, nowhere in Holloway's Complaint does he allege any subjective intent on Local 166's part to discriminate against him. The defendants again point out that conclusory allegations without specifying supporting facts to show Local 166's lack of good faith, fail to state a claim. *Robinson v. Environdyne,* 1978 U.S. Dist. LEXIS 15791 (N.D. Ill. 1978).

In response, Holloway argues that the Complaint alleges facts which show that Local 166's actions were negligent and egregious. (Pl.'s Resp., p. 16). However, Holloway ignores the well-established Seventh Circuit precedent holding that "negligence is not enough to establish a breach of [the duty of fair representation]." *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239 (7th Cir. Ind. 1990) (mere negligence or even gross negligence on the part of a union is insufficient); *Adams v. Budd Co.*, 846 F.2d 428, 432-33 (7th Cir.1988) (negligence is insufficient; instead a plaintiff must show that a union engaged in intentional misconduct)*; Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363 (7th Cir. 2003).

Holloway also argues that Local 166 was "perfunctory" and hostile in refusing to investigate his grievance. (Pl.'s Resp., pp. 16-19). The defendants point out that Holloway fails to specify any factual allegations in his Complaint that support his conclusion that the Union was perfunctory or hostile. Rather, Holloway repeatedly states that Local 166's refusal to institute the grievance process is, in itself, evidence of hostility or discrimination. Clearly, such allegations do not satisfy Seventh Circuit precedent. The Seventh Circuit has repeatedly held that a Union's refusal to pursue a grievance, without more, is not sufficient to be considered a breach of the duty of fair representation. *Youngstown Sheet & Tube Co.*, 911 F.2d at 1248 (a formulaic statement that

the union failed/refused to process the plaintiff's grievance "will not do"). It is clear that the Seventh Circuit requires that a plaintiff's complaint "allege not only what the union did, but [also] why or how." *Id*. A review of Holloway's Complaint reveals that he fails to allege any facts that meet the Seventh Circuit's requirements for a legally sufficient claim for the breach of the duty of fair representation.

In *Youngstown Sheet & Tube Co.*, the Seventh Circuit discussed the prerequisites for maintaining a Section 301 fair representation claim. The Court stated that for a plaintiff to maintain a legally sufficient fair representation claim he must allege in his Complaint facts sufficient to show that the union: 1) engaged in intentional misconduct; 2) discriminated against them for forbidden reasons, 3) intentionally sabotaged a possibly meritorious grievance because of personal enmity; 4) intentionally undermined a grievance on the basis of political allegiances within the union; or 5) intentionally caused harm to a member through fraud, deceitful action or dishonest conduct. *Id*. The defendants assert that Holloway has not alleged any facts in the Complaint that meet any of the foregoing pleading requirements but simply relies on formulaic recitations that Local 166 breached its duty of fair representation by failing and refusing to protest and grieve Holloway's wrongful termination. (Pl.'s Compl. ¶ 31). Holloway argues in his response brief that Local 166 breached its duty of fair representation by "completely and utterly failing to conduct an investigation on [Mr. Holloway's] behalf." (Pl.'s Resp., p. 17). However, as the defendants point out, such allegations are not contained in the Complaint and cannot be considered by the Court when evaluating the sufficiency of the Complaint. *Adams v. Cavanagh Communities Corp.*, 847 F. Supp. 1390, 1396 (N.D. Ill. 1994)(in ruling on a motion to dismiss, the court is limited to an examination of the pleadings) *Glatt v. Chicago Park Dist.*, 847 F. Supp. 101, 103 (N.D. Ill.

1994)(in ruling on a 12(b)(6) motion to dismiss the court must limit itself to consideration of the allegations of the complaint).

Defendant Shambaugh asserts, as a further basis for dismissal, that the allegations in Holloway's Complaint establish that Shambaugh had just cause to terminate his employment. Holloway admits in his Complaint that he failed to appear for a mandatory random drug test, despite being given notice of the need to do so by Local 166. (Pl. Compl. ¶ 12). Holloway attached to his Complaint, and incorporated by reference, the CBA between Shambaugh and Local 166. (Pl. Compl. Exh. A). Holloway's Complaint also makes reference to the Statewide Drug and Alcohol Testing Policy and Program (Pl. Compl.¶ 18), which in turn is incorporated by reference into the CBA. The Drug and Alcohol Testing Policy unambiguously states: "Employees who refuse to submit to a drug or alcohol test as required by this policy. . . are subject to discharge and revocation of the Identification Card." (Statewide Drug and Alcohol Testing Policy, Section F.5).

Thus Shambaugh argues that Holloway has admitted that the applicable CBA required him to appear for a mandatory random drug test, that he refused to appear for such a test when notified by Local 166 to do so, and that the CBA specifies that the consequence for such a refusal to appear for the mandatory drug test is termination of employment. Shambaugh argues that these circumstances constitute just cause for termination of Holloway's employment as a matter of law and constitute an independent basis for granting the motions to dismiss.

Holloway, in response, claims that "the distribution of a Letter of Notice was a well established practice that was a part of the parties' CBA" and that Local 166's failure to provide him with that "Letter of Notice" justified his refusal to be drug tested and exempted him from the consequences of such a refusal. (P. Mem. at 14). However, as the defendants point out, nowhere in

15

his Complaint has Holloway made an allegation that the "Letter of Notice" was an enforceable past practice under the CBA and there is also no allegation in the Complaint that this was Shambaugh's past practice. The Complaint simply states that "it was Local 166's failure to implement proper testing procedures, and subsequent instruction for him to go to the NLRB, that resulted in Mr. Holloway's wrongful termination." (Pl. Complaint at ¶ 34). The defendants argue that this does not allege that there was in existence a binding obligation on Shambaugh under the CBA to provide a "Letter of Notice", much less undermine the presence of just cause to terminate Holloway's employment. Rather, argues Shambaugh, the State Wide Drug Testing Policy incorporated into the CBA states that no advance notice of random drug testing is required to be given. Specifically, "Random Testing" is defined in that Policy as "[a]n unannounced, unscheduled drug and/or alcohol test." Clearly, therefore, the CBA (which is incorporated into Holloway's Complaint) did not require Shambaugh to provide a "Letter of Notice" to Holloway, and Holloway cannot base his Complaint on the failure to receive such a "Letter of Notice.

Accordingly, the court finds that the existence of just cause for Holloway's termination further supports the granting of the motions to dismiss.

## Conclusion

On the basis of the foregoing the defendants' motions to dismiss [DE 20, DE 22] will both be GRANTED.

Entered: December 19, 2013.

s/ William C. Lee
William C. Lee, Judge
United States District Court
